# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DeJESUS COLLINS, #366-774, | * |
| Plaintiff | * |
| v. | *    Civil Action No. JKB-18-1012 |
| WARDEN CASEY CAMPBELL,[1] <br> OFFICER KEVIN WILLIAMS, <br> AYOKU OKENTUNJI, M.D. | * <br><br> * |
| Defendants | * |
| | *** |

## MEMORANDUM OPINION

Self-represented Plaintiff DeJesus Collins, a State prisoner incarcerated at Jessup Correctional Institution in Jessup, Maryland ("JCI"), filed an unverified[2] Complaint, as supplemented, pursuant to 42 U.S.C. § 1983. Collins seeks money damages[3] against Correctional Defendants Warden Casey Campbell and Officer Kevin Williams for an alleged assault occurring on January 18, 2018. Collins also seeks damages against Medical Defendant Ayoku Okentunji, for denial of medical care following the assault.

---

[1] The Clerk shall amend the docket to reflect the full spelling of Warden Casey Campbell's name, and to note that the sole Medical Defendant is Ayoku Okentunji, M.D.

[2] Collins provides no declaration or affidavit in support of his lawsuit.

[3] Collins's allegations arguably state claims under the Eighth Amendment. In addition to unspecified damages, Collins requests an investigation of JCI and to be transferred to an outside hospital for mental health treatment. ECF No. 1, pp. 1, 3; ECF No. 3, p. 3, ¶ IV. For reasons set forth herein, injunctive relief mandating an investigation will not be required. Further, Collins's medical allegations will be addressed separately by Medical Defendant Ayoku Okentunji, for whom counsel entered an appearance on July 3, 2019. *See* ECF Nos. 25, 26.

Now pending is an unopposed[4] Motion to Dismiss or, in the Alternative, Motion for Summary Judgment filed by Correctional Defendants Campbell and Williams. ECF No. 19.[5] For the reasons stated below, Defendants' dispositive motion, construed as a motion for summary judgment,[6] IS GRANTED.

## Background

### A. Plaintiff Collins's Allegations

Collins states that around 11:30 a.m. on January 18, 2018, he was "slam[med] and beaten in the head" by Defendant Williams after Williams "forced" him into the cell. ECF 3, pp. 2, 4-5. He alleges that Williams then wrote a false notice of infraction against him, claiming Collins instigated the incident by assaulting prisoner Ryan Howard, who already was housed in the cell. ECF No. 3, p. 5. Collins states that although nearly unconscious, he heard Officer Latasha Barrett telling Williams to "stop you gonna kill him." ECF No. 3, p. 6. Collins claims that his face was bleeding on both sides (ECF No. 3, p. 6), and that in addition to "Crohns disease, chronic abdominal pain, [...] traumatic brain injury and lumbar injury" he suffered in the past (ECF No. 1, p. 1), he now suffers from "irreparable injury my back, legs, head, stomach," cannot "walk at all," and has frequent "ongoing pain...from the assault." ECF 3, p. 3.

---

[4] Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), on November 13, 2018, the Clerk notified Collins that Defendant had filed a dispositive motion. *See* ECF No. 20. He was also informed of his right to file a timely written response and of the possibility that if he failed to respond the case could be dismissed or a judgment entered against him without further notice. *Id.*

[5] This opinion cites to the pagination assigned by the Court's electronic docket.

[6] Defendants' dispositive motion is treated as a motion for summary judgment under Federal Rule of Civil Procedure 56 because materials outside the original pleadings have been considered. *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

## B. Defendants' Assertions

Defendants assert the incident occurred on the morning of January 19, 2018. ECF No. 19-2, p. 2, Campbell Memorandum of February 1, 2019. On that day, Williams was assigned to Collins's housing unit to escort prisoners for any out-of-cell activity, including cell transfers. ECF No. 19-3, Declaration of Corporal Kevin Williams, ¶ 3. Collins was scheduled to be transferred from his cell to disciplinary segregation within the same housing unit after he refused to accept a cell mate. *Id.*, ¶ 4. Prior to the transfer, personnel at the Control Center confirmed with Williams that Collins was not designated for single-cell placement and could be housed with another prisoner in disciplinary segregation. *Id.*

As Williams and Collins approached the segregation cell where Ryan Howard already was housed, Collins refused to be double-celled because Collins needed to sleep on a bottom bunk. ECF No. 19-2, Use of Force Summary, p. 6. Williams then stepped into the cell to help Howard move his property to the top bunk. *Id.* Once the bottom bunk was clear, Williams stepped out of the cell. *Id.* Collins then stepped into the cell and attacked Howard with his fists. *Id.*, Notice of Inmate Rule Violation, p. 22. Three other officers present at the cell as well as Howard provided written statements that they witnessed Collins attack Howard. *Id.*, pp. 6, 11, 13, 19.

Williams and two other officers ordered both Collins and Howard to stop fighting. *Id.*, pp. 6, 11, 13. Howard gave no resistance once Williams pulled Collins away from him by grabbing Collins from the waist and taking him to the floor. ECF No. 19-3, ¶ 6; ECF No. 19-2, pp. 6, 22. Collins continued to struggle until handcuffed by another officers. ECF No. 19-2, pp. 22. Both

Collins and Howard were escorted to the medical unit. *Id.* Video footage of the incident is attached as ECF No. 19-5; ECF No. 19-2, p. 6.[7]

Collins was treated for two contusions to his head and lacerations to his upper eyebrow. ECF No. 19-4, p. 2. He told the nurse that he was "locked in a cell with a cell body [sic] and because he did not want a cell body [sic] he swung on him and the officers slammed him on the floor." *Id.* Collins complained of a headache and received Tylenol and a cold compress, and a follow-up medical visit for further assessment later in the day was ordered. *Id.* He was treated for facial lacerations later the same day. *Id.*, 3.

In the month following the incident, Collins visited the medical and psychology units at JCI, receiving two x-rays and other examinations for complaints regarding injuries received in the incident as well as follow-up chronic care treatment for unrelated medical conditions. *Id.*, pp. 5-55.

In his January 19, 2018, statement provided for the Use of Force investigation, Williams under oath avers that he did not slam Collins to the floor or repeatedly hit him on the head. *Id.* at ¶¶ 5, 6. Williams also filed, under oath, a Notice of Inmate Rule Violation charging Collins with five rule violations: Rule 100 (engaging in disruptive act); Rule 102 (assault on inmate); Rule 312 (interfering with officer duty); Rule 400 (disobeying order); and Rule 401 (refusing to accept housing assignment). ECF 19-2, p. 30. At his hearing, Collins pleaded not guilty and testified that Howard was not injured, that Collins was never taken to the medical unit or the hospital, and that Collins was the only person assaulted. *Id.*, p. 34. The hearing officer reviewed the Use of Force, Notice of Rule Violation, and other testimony as credible and found Collins guilty of violating

---

[7] Collins was provided an opportunity to view the video. ECF No. 21-1.

Rules 100, 102, 400, and 401. *Id.*, p. 35. Collins received a segregation sentence and good conduct credits were revoked. *Id.*, p. 36.

## Applicable Legal Standards

This Court is mindful of its obligation to liberally construe the pleadings of pro se litigants. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, liberal construction does not mean that this Court can ignore a clear failure in the pleading to allege facts that set forth a cognizable claim, *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990), or "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). In making this determination, "[t]he district court . . . must hold the pro se complaint to less stringent standards than pleadings drafted by attorneys and must read the complaint liberally." *White v. White*, 886 F.2d 721, 722-23 (4th Cir. 1989).

A motion for summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing that there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the Court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998). Nevertheless, a party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Thus, on those issues on which the non-moving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *See Anderson*, 477 U.S. at 256.

**Analysis**

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *see also Brooks v. Johnson*, 924 F.3d 104, 107 (4th Cir. 2019) (critical Eighth Amendment question one of motive where officer tasered plaintiff in good faith effort to maintain or restore discipline or maliciously "for the very purpose of causing harm," citing *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986) (internal quotation marks omitted)).

In making this determination, the Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34 (2010). The extent of injury incurred is one factor indicative of whether the force used was necessary in the particular situation. However, if force is applied

6

maliciously and sadistically, liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id*. at 38.

The Court has reviewed the video, which was taken from stationary cameras at the front and rear of the bottom tier hallway in the "C wing." The video shows Collins walking under escort, pushing a bin (possibly personal property), with a wheelchair in tow. Collins talks and shakes hands with an unidentified prisoner through a feed slot across the hallway before he is directed to enter the segregation cell he was to share with Howard. Williams quickly follows Collins into the cell and retreats seconds later (presumably after helping Howard clear the bottom bunk for Collins's use). What occurred in the cell is not visible from the video; however, Williams and other officers appear to rush into the cell seconds after Collins enters the cell. One officer emerges from the cell almost immediately, while the others emerge minutes later with Collins in handcuffs. Collins showed no signs of acute distress or extensive injury and walked off the tier under escort.

Williams's affirmative statement charging Collins with an institutional violation statement aligns with portions of the video showing what occurred in the tier hallway. Further, Collins provides no verified statement or record evidence to counter Williams's version of the incident. Although not totally conclusive as to what precisely occurred in the cell, the brief period captured by the video demonstrates that both prisoners were fully conscious when escorted from the tier. Collins was immediately taken to the medical department, where injuries consistent with the limited use of force described by Williams and other officers who witnessed the event were noted. Collins was found guilty of several of the infractions with which he was charged resulting from the incident. Williams's conduct does not appear to cross the line constituting excessive use of force in violation of the Eighth Amendment.

7

The Complaint contains no direct allegation against Campbell, who appears to have been named Defendant based on his role as Warden of JCI. It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported with evidence that (1) the supervisor had actual or constructive knowledge that his or her subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Without any specific allegations implicating Campbell in any wrong-doing, there is no basis for a claim against him. Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

An Eighth Amendment violation for excessive use of force by Defendant Williams is not apparent on this record, and no basis exists to hold Defendant Campbell liable for the incident. Accordingly, the Motion to Dismiss or, Alternatively, for Summary Judgment filed by Correctional Defendants Campbell and Williams, construed as a motion for summary judgment, will be granted. A separate Order follows.

Dated this 23rd day of July, 2018.

FOR THE COURT:

_____/s/_____
James K. Bredar
Chief Judge