IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DEJESUS COLLINS, *#366-774*, *#1746140* | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. JKB-18-1012 |
| AYOKU OKENTUNJI, M.D., | * | |
| Defendant. | * | |
| | *** | |

## MEMORANDUM OPINION

Self-represented Plaintiff DeJesus Collins, an inmate currently incarcerated at Jessup Correctional Institution ("JCI") in Jessup, Maryland, filed the above-captioned 42 U.S.C. § 1983 civil rights Complaint against Defendant Ayoku Okentunji, M.D., on April 6, 2018, alleging, *inter alia*, that he has not received necessary medications at JCI. ECF No. 1.[1] On May 7, 2018, Plaintiff supplemented his Complaint to state that Defendant failed to send him to an outside hospital for treatment after he sustained serious facial and head injuries from an alleged assault. ECF No. 3 at 12. He seeks a preliminary injunction and monetary damages. *Id.* at 3.[2] On September 6, 2019, Plaintiff moved for appointment of counsel. ECF No. 34.

On November 19, 2019, Defendant filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. ECF No. 39. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Court informed Plaintiff that the failure to file a response in opposition to Defendant's motion could result in dismissal of the Complaint. ECF No. 40. Plaintiff filed nothing further.

---

[1] Plaintiff also brought suit against JCI Officer Kevin Williams and Warden Casey Campbell, both of whom were granted summary judgment on July 23, 2018. ECF Nos. 28, 29.

[2] Although Plaintiff was previously granted leave to proceed in forma pauperis, ECF No. 5, he filed another motion seeking the same relief on September 6, 2019. ECF No. 31. That subsequent Motion for Leave to Proceed in Forma Pauperis shall be denied.

This Court deems a hearing unnecessary. *See* Local Rule 105.6 (D. Md. 2016). For the reason set forth below, Defendant's Motion shall be granted, and Plaintiff's Motion to Appoint Counsel shall be denied.

**Background**

In his initial Complaint, Plaintiff alleges that he had "been hurt really bad," needs help, and needs to go to a hospital. Complaint at 1, ECF No. 1. Plaintiff claims that he cannot walk at all and is having severe migraines and headaches. *Id.* Plaintiff also claims that he suffers from Crohn's disease and chronic abdominal pain, for which there is no cure, and that he previously suffered a traumatic brain and lumbar injury. *Id.* According to Plaintiff, he was previously issued a wheelchair and was given medications, but he is no longer receiving medication for Crohn's disease or for pain management. *Id.*

Plaintiff alleges that on January 18, 2018, he was assaulted by a correctional officer, causing cuts and swelling on his head and face. *Id.* at 1-2. In a supplement to the Complaint, Plaintiff alleges that Defendant never authorized for him "to be sent out to a[n] outside hospital knowing how serious my head and facial conditions were . . . ." Supplement at 12, ECF No. 3.

Plaintiff has a medical history significant for, *inter alia*, regional enteritis (Crohn's disease), a positive tuberculosis skin test without active tuberculosis, hyperlipidemia, and gastritis, and a mental health history significant for anxiety, hallucinations, and depression. Oketunji Affidavit at ¶4, ECF No. 39-5. As of October 24, 2017, Plaintiff was receiving Gabapentin, Baclofen and Tylenol Extra Strength to relieve his back and stomach pain. *Id.* at 9.

At around 12:48 p.m. on January 19, 2018, Plaintiff was seen at nurse sick call following an altercation in his housing unit. *Id.* at 10. The nurse noted that Plaintiff had blood on his face, shirt, and hands, which she cleaned with saline and bandaged. *Id.* Plaintiff had two head

contusions, one to the right side and one to the back of the head, as well as a laceration to his eyebrow, to which steri-strips were applied. *Id.* A bandaid was also placed on his right thumb. *Id.* Plaintiff was given Tylenol for pain and was told to return for further assessment later in the day. *Id.*

Plaintiff returned at approximately 9:35 p.m., at which time he was seen by a nurse practitioner. *Id.* at 11. Plaintiff was noted to have a superficial laceration to the left eyebrow and a 3cm laceration to the right eyebrow involving the fascia. *Id.* Three sutures were applied to the right laceration and Plaintiff was given Ibuprofen 600mg for pain. *Id.* He was told to return in 7 days to remove the sutures. *Id.*

The following day, on January 20, 2018, Plaintiff was seen by a nurse with complaints of dizziness and pain in his head and back. *Id.* at 13. At that time, there was redness and swelling to his right eye but no active bleeding. *Id.* Plaintiff requested an x-ray or MRI of his head. *Id.* He was reassured that his vitals were stable and given Motrin 600mg and two cold compress packets. *Id.*

On January 22, 2018, Plaintiff was seen by a nurse practitioner for follow up of his assault injuries. *Id.* at 14-15. It was noted that Plaintiff was doing better; nonetheless, an x-ray was ordered to rule out a possible fracture of his facial bones. *Id.* Plaintiff was directed to continue taking Tylenol for pain, and an order to refill his Baclofen was issued. *Id.*

On January 23, 2018, Plaintiff was seen by a physician's assistant for his injuries. *Id.* at 16-18. Plaintiff reported redness, headache, and blurry vision, but his examination was unremarkable. *Id.* Plaintiff had mild swelling of the mid portion of his left middle finger, and an x-ray of the finger was ordered. *Id.*

On January 24, 2018, the results of Plaintiff's x-rays were received. *Id.* at 19-20. His facial

x-ray revealed "no evidence of an acute fracture, dislocation or subluxation," the alignment was anatomic, and the paranasal sinuses were well aerated. *Id.* at 19. Similarly, with regard to his finger, there was "no evidence of an acute fracture, dislocation or subluxation," and the alignment was anatomic. *Id.* at 20.

On January 29, 2018, Plaintiff had a sick call visit with a nurse practitioner after he requested renewal of Immodium and the use of a wheelchair, which had expired in July 2017. *Id.* at 21. As Plaintiff could move all four extremities, there was no indication for a wheelchair at that time. *Id.* Plaintiff's wounds were examined and his sutures were removed. *Id.*

From February 12 to February 14, 2018, Plaintiff complained of pain and claimed that he could not walk. *Id.* at 23-28. On February 18, 2018, he was seen by Defendant at the chronic care clinic. *Id.* at 29-33. Plaintiff complained of six bowel movements daily with blood in his stool and intermittent abdominal pain, but denied nausea or vomiting. *Id.* Defendant noted that Plaintiff had a history of Crohn's disease, and he ordered a gastroenterologist evaluation at the University of Maryland Medical System ("UMMS"), as was recommended via a gastroenterologist telemed conference in October 2017. *Id.* Plaintiff, who presented in a wheelchair, also stated that he could not walk following the January altercation. *Id.* Defendant explained to Plaintiff that the only injuries noted were lacerations to the face, and his exam and x-rays did not show any reason why he could not walk. *Id.*

On March 1, 2018, Plaintiff's gastroenterology ("GI") consult at UMMS was approved. *Id.* at 34. On March 6, 2018, Plaintiff returned to see Defendant for complaints that he could not walk. *Id.* at 35-36. Plaintiff was observed with his legs raised up while being wheeled into the office, he continuously moved his legs while seated, he was able to assist in getting his shoes off, and was able to put them back on unassisted. *Id.* Defendant performed a neurologic exam, which

4

did not elicit any neuromuscular deficits, and deep tendon reflexes elicited both knee jerks. *Id.* Defendant noted that Plaintiff's right knee had scraped skin reportedly from crawling but opined that there was no reason Plaintiff could not walk. *Id.*

On or about March 22 and March 27, 2018, Plaintiff submitted sick call slips complaining of migraine headaches. *Id.* at 39-40. Plaintiff also continued to claim that he was unable to walk due to chronic abdominal and back pain. *Id.* He filed this suit on April 6, 2018. ECF No. 1.

On April 10, 2018, Plaintiff had a sick call visit, at which time it was explained that an x-ray of his lumbar spine on March 6, 2018 showed no acute osseous abnormality. ECF No. 39-4 at 41. Tylenol was prescribed for pain management and labs were taken. *Id.* The following day, on April 11, 2018, Plaintiff returned for a follow up of his lab results. *Id.* at 43-44. According to the nurse practitioner, Plaintiff's labs were either within normal limits or had improved from the prior month. *Id.* During that visit, Plaintiff denied abdominal pain, bloody stools, or vomiting. *Id.*

On April 24, 2018, Defendant submitted a consultation request for a CT scan of Plaintiff's abdomen and pelvis. *Id.* at 45. In support of his request, Defendant noted that Plaintiff had been approved for a GI consult at UMMS but could not be seen until September 2018. *Id.* Defendant stated, "he continues to complaint of abdominal pain, bloody diarrhea and reflux. I need to get a CT scan of his abdomen and pelvis whilst waiting for the consult to take place, to see the condition of his GI tract and decide on what type of treatment I can offer." *Id.*

On or about May 11, 2018, Plaintiff submitted a sick call slip complaining of migraine headaches and abdominal pain. *Id.* at 46. He was seen by a nurse practitioner who noted that his labs were stable and his renal profile was within normal limits. *Id.* Plaintiff reported he was on day 8 of a hunger strike. *Id.*

On May 15, 2018, Plaintiff was seen by medical staff for a chart update. *Id.* at 29. At that

time, Plaintiff reported that he was on day 13 of a modified hunger strike. *Id.* Plaintiff claimed that he still could not walk and had to crawl to get around. *Id.* He was sent to the infirmary, where he was evaluated by medical staff on May 17, 18, 20, 21, and 22, 2018. *Id.* at 52-62. On May 22, 2018, Plaintiff was reported to have eaten during the last 4 days and was observed walking despite his claims that he still could not walk. *Id.* at 61. On May 24, 2018, Plaintiff was discharged from the infirmary. *Id.* at 63.

On May 25, 2018, Plaintiff was seen by a physician's assistant following his trip to UMMS for a CT scan of the abdomen. *Id.* at 65. On May 30, 2018, it was noted that the CT scan revealed acute Crohn's disease. *Id.* at 70.

In June 2018, Plaintiff was prescribed Tramadol for pain, and Percocet temporarily when Tramadol was not available. *See id.* at 72-79. He was routinely seen by a medical provider who found no evidence of an exacerbation of Crohn's disease. *Id.* at 82-84. A plan was created to send Plaintiff to Bon Secours Hospital ("BSH") for GI and neurology evaluations as well as a functional assessment for mobility. *Id.* at 87.

On June 27, 2018, Plaintiff was seen at the BSH emergency room for a claimed hunger strike, back pain, inability to walk, diarrhea, and weight loss. *Id.* at 88-91. Plaintiff had the GI and neurology evaluations and was seen by a physical therapist. *Id.* He was scheduled for an MRI of the abdomen and hips. *Id.*

As of June 29, 2018, Plaintiff was awaiting a brain MRI. *Id.* The GI evaluation revealed that Plaintiff was in remission for Crohn's disease, and his MRI revealed a distension of the urinary bladder, degeneration, and a tiny subligamentous disc herniation of the L5-S1 disc. *Id.* Plaintiff was assessed to have possible multiple sclerosis with bilateral necrosis of the hips and was converted from inpatient to observational status. *Id.*

6

Plaintiff continuously sought to be released from BSH and became upset when his pain medication was reduced. *Id.* During Plaintiff's stay at BSH: (1) he had intact neurologic exams; (2) he was seen walking without any help; (3) his knee skin was clean and soft with no sign of trauma; (4) physical therapy worked with him and recommended a rolling walker but Plaintiff only wanted a wheelchair; (5) orthopedics recommended outpatient follow up with possible calcium injection for aseptic necrosis of the bilateral hips; (6) with regard to his Crohn's disease, Plaintiff did not lose any weight, there was no increase in his bowel movement frequency, and no blood in his stool; (7) Plaintiff was recommended to see a rheumatologist for his bilateral sacroiliitis; and (8) he was diagnosed with anxiety and bipolar disorder with trust issues and paranoid behavior. *Id.*

On July 2, 2018, Plaintiff was discharged from BSH to the JCI infirmary. *Id.* at 92-93. He was scheduled to follow up with psychiatry, neurology, GI and rheumatology at UMMS, and for an orthopedic consult. *Id.* Plaintiff was prescribed Tramadol 50mg for pain and Pentasa 500mg for his abdominal pain and blood in stool. *Id.*

Thereafter, Plaintiff was seen standing, cleaning his room, stretching his bed, walking on his own, and independently performing activities of daily living. *See id.* at 98-101. However, Plaintiff insisted on using a wheelchair. *Id.* Plaintiff was asked to report to nursing when he had a bowel movement to see if there was blood, but he refused. *Id.* at 103-04.

On July 9, 2018, Plaintiff requested Neurontin for pain but was told there was no indication for it. *Id.* at 105. On July 12, 2018, Plaintiff was evaluated by physical therapy and was assessed with bilateral lower leg weakness of unknown origin. *Id.* On July 20, 2018, Plaintiff complained that he did not receive Tramadol. *Id.* at 110. When asked why he refused the last two sessions of physical therapy, Plaintiff attributed it to pain. *Id.* It was explained to Plaintiff that physical

therapy would help mobility, range of motion and pain, and that in addition to Tramadol, an anti-inflammatory such as Naprosyn, Motrin, or Tylenol Extra Strength would be prescribed before each session. *Id.* Plaintiff became aggressive, loud and threatening, and had to be removed. *Id.*

Throughout July and August 2018, Plaintiff received physical therapy intermittently and was prescribed Percocet for pain. *See id.* at 111-126. On August 20, 2018, Plaintiff's lower extremity strength was 5/5 with normal sensory exam, and he was discharged from physical therapy. *Id.* at 127. He denied having diarrhea and abdominal pain. *Id.*

For the remainder of August 2018, Plaintiff repeatedly asked for Percocet although he displayed no characteristics of being in pain and was able to walk. *Id.* at 128-132. Plaintiff was assessed as being a "master manipulator," and it was recommended that he be discharged. *Id.* at 129.

On September 25, 2018, Plaintiff was seen by an orthopedist who recommended an MRI, additional physical therapy, and analgesics for pain. *Id.* at 139. The following day, he had a GI (gastrointestinal) evaluation at UMMS, and was recommended to have a restaging colonoscopy, start Prednisone at 40mg and taper down 5mg a week, obtain labs and stool studies, and take Tramadol for pain relief. *Id.* at 141.

On October 10, 2018, Plaintiff was seen by a rheumatologist at Mercy Medical Center, where he was diagnosed with a mild but stable avascular necrosis in both hips resulting from high steroid use. *Id.* at 148. It did not appear, however, that Plaintiff's complaints were related to this condition. *Id.* On October 17, 2018, Plaintiff was seen by an orthopedist at BSH, who recommended physical therapy for his disc disease at L5-S1 with herniation. *Id.* at 150-51. Surgery for calcium subchondroplasty with internal fixation with cannulated screw was recommended for Plaintiff's hips. *Id.*

8

On October 19, 2018, Plaintiff was seen by Defendant. *Id.* at 152-53. Defendant reviewed Plaintiff's consults and conditions, prescribed Tramadol l00mg twice daily for pain pending colonoscopy findings and repair of his hips, discontinued Percocet, and added Baclofen. *Id.* Defendant also requested a restaging colonoscopy and orthopedic surgery. *Id.* On November 1, 2018, Defendant resigned from employment at JCI. *See* ECF No. 39-3 at 23.

## Standard of Review

Defendant's motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Hous., LLC v. The City of Salisbury*, 672 F. App'x. 220, 222 (4th Cir. 2016) (per curiam). But, when the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

9

Because Defendant filed a motion titled "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment," Plaintiff was on notice that the Court could treat Defendant's motion as one for summary judgment and rule on that basis. *See id.* Accordingly, the Court will review Plaintiff's claims under the Rule 56(a) standard.

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48 (emphasis in original). The Court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. NC. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

**Discussion**

I. **Plaintiff's Claims**

Defendant asserts that Plaintiff's claims must be dismissed because: (1) the Complaint is insufficient in its face; (2) the doctrine of respondeat superior is not recognized in § 1983 claims; and (3) Plaintiff's claims of medical negligence are not judicially actionable. ECF No. 39-3 at 25-29. Alternatively, Defendant argues that he is entitled to summary judgment because there is no evidence that he was deliberately indifferent to Plaintiff's medical needs. *Id.* at 29-34. In addition, Defendant contends that Plaintiff does not allege facts sufficient to support a claim for punitive damages; nor is he entitled to injunctive relief. *Id.* at 34-35. As previously explained, the Court will construe Defendant's motion as one for summary judgment.

Plaintiff's claims, brought pursuant to 42 U.S.C. § 1983, are based on his Eighth Amendment right to be free from cruel and unusual punishment. To sustain an Eighth Amendment claim for denial of adequate medical care, a plaintiff must demonstrate that the defendant's acts or omissions amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Objectively, the medical condition at issue must be serious. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A medical condition is serious when it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citation omitted).

The subjective component requires "subjective recklessness" in the face of the serious

medical condition. *See Farmer v. Brennan*, 511 U.S. 825, 839-40 (1994). "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997); *see also Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Jackson*, 775 F.3d at 178 (citations omitted). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *See Farmer*, 511 U.S. at 844. "[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson*, 775 F.3d at 178. Thus, "[d]eliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (citation and internal quotation marks omitted).

Under this standard, a mere disagreement between an inmate and a physician over the appropriate level of care does not establish an Eighth Amendment violation absent exceptional circumstances. *Id.* Further, the right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable*." *Bowring v. Godwin,* 551 F.2d 44, 47-48 (4th Cir. 1977) (emphasis added).

Construed liberally, Plaintiff's claims center on Defendant's alleged failure to provide a wheelchair and medication for Crohn's disease or for pain management. In addition, Plaintiff claims that Defendant violated his constitutional rights by failing to send him to an outside hospital after an alleged assault on or about January 18, 2018.

Based on the record, it appears that Plaintiff has been routinely seen and treated by the medical staff at JCI to address his chronic medical issues. Since January 2018, Plaintiff's complaints were assessed and addressed during sick call, scheduled visits, extended stays at the infirmary, consultations with specialists, and inpatient care at outside hospitals. Plaintiff alleges that he stopped receiving pain medication at the time he filed the Complaint in April 2018. However, his medical records indicate that he received Tylenol Extra Strength through March 18, 2018 and restarted on April 10, 2018, Tramadol beginning April 24, 2018, and Baclofen through May 18, 2018. ECF No. 19-4 at 36, 48. In addition, during that time, the medical staff performed labs and x-rays, finding no indication for use of a wheelchair. Plaintiff was referred to outside specialists for a CT scan and GI consultation.

With regard to the treatment Plaintiff received following the alleged assault in January 2018, the Court cannot find that Defendant was deliberately indifferent to his needs. Subjectively, Defendant's decision to keep Plaintiff at JCI did not amount to an act or omission "for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. In the week that followed the incident, Plaintiff was seen six times in the medical unit, at which time his wounds were cleaned and sutured, and x-rays were ordered to confirm that he had no acute fracture, dislocation or subluxation. Plaintiff has marshalled no evidence that Defendant exhibited a callous disregard for a serious medical need. *See Estelle*, 429 U.S. at 105-06. As previously indicated, "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3rd Cir. 1970)).

In this case, there are no exceptional circumstances, as Plaintiff's numerous medical conditions have been closely monitored by Defendant and the JCI medical staff. On these facts,

viewed most favorably to Plaintiff, he cannot demonstrate that Defendant callously disregarded any serious medical needs. Summary judgment is therefore granted in Defendant's favor.[3]

## II. Request for Preliminary Injunction

To the extent Plaintiff asks the Court to issue an Order "to protect [him] from any more harm," he seeks a preliminary injunction. ECF No. 3 at 3. To obtain a preliminary injunction, a plaintiff must establish that (1) the plaintiff is likely to succeed on the merits, (2) the plaintiff is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in the plaintiff's favor, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011). Because a preliminary injunction is "an extraordinary remedy . . . [it] may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. The plaintiff must satisfy all four of these requirements. *See Pashby v. Delia*, 709 F.3d 307, 320-21 (4th Cir. 2013). As discussed above, Plaintiff cannot succeed on the merits of his claim. Because the first requirement cannot be met, the Court will deny Plaintiff's request for a preliminary injunction.

## III. Motion to Appoint Counsel

Prior to Defendant's filing of his dispositive motion, Plaintiff filed a Motion to Appoint Counsel. ECF No. 34. The Court may, pursuant to 28 U.S.C. § 1915(e)(1) (2012), appoint an attorney to represent any person "proceeding in forma pauperis who is "unable to afford counsel." In civil actions, however, the Court appoints counsel only in exceptional circumstances. *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975). In doing so, the Court considers "the type and complexity of the case," whether the plaintiff has a colorable claim, and the plaintiff's ability to

---

[3] In light of the Court's ruling, it is not necessary to address Defendant's remaining arguments.

prosecute the claim. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984) (internal citations omitted), *abrogated on other grounds by Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989). Exceptional circumstances include a litigant who "is barely able to read or write," *id.* at 162, or clearly "has a colorable claim but lacks the capacity to present it," *Berry v. Gutierrez*, 587 F.Supp.2d 717, 723 (E.D.Va. 2008); *see also Altevogt v. Kirwan*, No. WDQ-11-1061, 2012 WL 135283, at *2 (D. Md. Jan. 13, 2012). Inherent in this analysis is that one's indigence alone is insufficient to establish exceptional circumstances.

Plaintiff claims that he cannot read or write, and that he is having other prison inmates help him. ECF No. 34. After reviewing Plaintiff's numerous filings in this case, the Court finds that he has adequately presented his claims, and his case need not proceed to discovery or a hearing. For these reasons, appointment of counsel is not warranted.

## Conclusion

Defendant's motion, construed as one for summary judgment, is granted. Plaintiff's motions are denied.

A separate Order follows.

Dated this 5th day of June, 2020.

FOR THE COURT:

_____/s/_____
James K. Bredar
Chief Judge